FULMER, Judge.
 

 Todd Raven appeals a final order of the Manatee County School Board terminating his employment as a teacher. The central issue we decide in this appeal is whether Raven had a statutory right to be represented by counsel during an investigatory interview. The administrative law judge (“ALJ”) concluded that section 120.62(2), Florida Statutes (2007), gave Raven a right to counsel at the investigatory interview. The School Board rejected the ALJ’s interpretation of section 120.62(2) and substituted its conclusion that section 120.62(2) did not afford Raven a right to counsel. Because Raven refused to participate in the investigatory interview without counsel, the School Board terminated his employment. We agree with the ALJ’s conclusion that section 120.62(2) gave Raven the right to be represented by counsel and, therefore, reverse the final order of the School Board.
 

 This case began when Ms. Horne, the investigator for the School Board’s Office of Professional Standards (“OPS”), learned about an allegation of possible inappropriate interaction between Raven and one of his students. Ms. Horne was advised that a joint investigation was being conducted by Child Protective Services and the Sheriffs Office. As was her practice, she delayed her own investigation until she was notified that the joint investigation was completed. A detective informed her that there appeared to be no criminal activity and, thus, no charges would be filed. Because the allegation involved a student, Ms. Horne decided to proceed with her investigation. She directed Raven to report to OPS to meet with her for an investigatory interview. Raven was advised that he would not be allowed to have his attorney present during the interview. Raven appeared for the interview accompanied by his attorney. After he was again advised that his attorney could not be present, Raven declined to participate in the interview.
 

 Because of Raven’s refusal to submit to the interview, the superintendent recommended to the School Board that Raven be suspended without pay pending termination of his employment. The superintendent’s petition for termination alleged that Raven’s refusal to sit for the interview constituted just cause for termination, mis
 
 *128
 
 conduct in office, gross insubordination, and a violation of the School Board policy which requires all employees to cooperate fully with OPS. Raven filed a petition for evidentiary hearing, which the School Board referred to the Division of Administrative Hearings.
 

 The evidentiary hearing was conducted by an ALJ. At this hearing, portions of the Manatee County School Board Policies and Procedures Manual were introduced into evidence, specifically, policy 6.11 and policy 6.13. These policies address personnel matters. Policy 6.11 contains procedures governing employment. Policy 6.18 creates the OPS and contains procedures for investigating complaints.
 

 Policy 6.11 provides, in pertinent part:
 

 1. Suspension or Termination of Employees
 

 Any employee of the School Board may be temporarily suspended, with or without pay, or permanently terminated from employment, for just cause including, but not limited to, immorality, misconduct in office, incompetence, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude, violation of the Policies and Procedures Manual of the School District of Manatee County, violation of any applicable Florida statute, violation of the Code of Ethics and the Principles of Professional Conduct of the Education Profession in Florida.
 

 Policy 6.18 provides, in pertinent part:
 

 The Office of Professional Standards shall conduct investigations into alleged employee misconduct or other matters concerning the school district and make recommendations as to the disposition of such complaints or matters and report legally sufficient complaints to the Education Practices Commission.
 

 ... All complaints concerning alleged employee misconduct or other matters that need investigation received by School Board Members, the Superintendent, or any employee in the District shall be forwarded to OPS for investigation.
 

 ... OPS will investigate each complaint or other matter in an appropriate manner, which may include, but not be limited to, the interviewing of witnesses, consideration of pertinent documents, review of electronic data, and obtaining a statement from the subject of the investigation. Any employee who is the subject of an investigation shall be informed of the investigation at the appropriate time.
 

 ... Any employee who is the subject of an investigation shall not contact any School Board Member or have anyone contact a School Board Member on their behalf during the investigation or any subsequent disciplinary proceedings which may result from the investigation.
 

 ... All Board employees shall cooperate fully with OPS or other appropriate authorities who are conducting investigations.
 

 ... Failure to cooperate completely and truthfully will subject an employee to disciplinary action.
 

 In his recommended order, the ALJ found that because Raven was “compelled to appear before the OPS investigator during the course of an official School Board investigation,” he was entitled to be accompanied, represented, and advised by counsel at his own expense pursuant to section 120.62(2), which provides:
 

 Any person compelled to appear, or who appears voluntarily, before any presiding officer or agency in an investiga
 
 *129
 
 tion or in any agency proceeding has the right, at his or her own expense, to be accompanied, represented, and advised by counsel or by other qualified representatives.
 

 The ALJ reasoned that by adopting policy 6.18, the School Board delegated all of its investigatory powers, including its power to conduct investigatory interviews, to the OPS investigator, Ms. Horne, and, therefore, Ms. Horne is the authorized representative of the School Board for purposes of section 120.62. The ALJ concluded that because the School Board violated Raven’s right to counsel, a final order should be entered finding that Raven’s refusal to be interviewed without counsel did not constitute a violation of the charges alleged in the superintendent’s charging letter, that Raven’s suspension without pay should be reversed, and that Raven should be compensated for the period he was suspended without pay.
 
 [1]
 

 The School Board argues that section 120.62(2) provides a right to counsel only if the investigation is being conducted by a “presiding officer” or the “agency.” In other words, if the School Board itself, sitting as a collegial body, conducts an investigation, the right to counsel applies. But, because Ms. Horne is neither a “presiding officer” nor the “agency,” the right to counsel does not arise during her investigations. In its Final Order the School Board states:
 

 The ALJ attempts to circumvent the correct interpretation of section 120.62(2) Florida Statutes (2007), by interpreting School Board Policy 6.13 as a delegation by the School Board of “all of its investigatory powers, including its power to conduct investigatory interviews, to the OPS investigator.” Based on that interpretation, the ALJ erroneously concludes that Horne is an “agent” of the School Board and, therefore, when an employee appears before her in an investigation, it is the same as appearing before the School Board in an investigation, thus giving that individual the right to an attorney under paragraph (2).
 

 A more reasonable and correct interpretation of School Board Policy 6.13 is that it is not an appointment of OPS as the agent of the School Board to act on behalf of and in the place of the School Board as recommended by the ALJ. That policy merely represents the creation of a position to be filled as section 1012.22(1) Florida Statutes (2007) requires the School Board to do. The purpose of the position is to conduct investigations so that the Superintendent may make recommendations to the School Board concerning employee discipline as he is required to do under sections 1012.27 and 1012.33, Florida Statutes (2007).
 

 In rejecting the ALJ’s finding that policy 6.13 delegated all of the School Board’s investigatory powers to the OPS investigator, the School Board asserts that it has the authority to conduct its own investigations and, should it choose to do so, any person compelled to appear before the Board, as opposed to OPS, would be entitled to an attorney under section 120.62(2) because that person would be appearing before an “agency” in an investigation. We agree with the School Board
 
 *130
 
 that it has the authority to conduct investigations on its own. We also agree that it does not always have to act through an agent as the ALJ’s recommended order suggested. And, we agree that Ms. Horne is neither a “presiding officer” nor the “agency.” However, as the ALJ correctly found, by adopting policy 6.13 the School Board has elected not to conduct investigations into allegations of teacher misconduct but instead has delegated all of its investigatory authority over these types of complaints to OPS. Thus, whether Ms. Horne is called an agent or representative or simply an employee is not determinative of whether section 120.62(2) applies to the investigatory interviews she conducts into allegations of teacher misconduct. What is determinative is whether her investigation constitutes an “agency in an investigation” as that phrase is used in section 120.62(2).
 

 The plain language of policy 6.13 and the testimony presented at the hearing establish that for the type of complaint lodged against Raven, the School Board, as a body, never conducts an investigation itself but rather has directed that all such investigations will be conducted by Ms. Horne. All of the evidence presented at the hearing supports the ALJ’s finding that the School Board delegated its investigatory authority over these types of complaints to OPS.
 
 [2]
 

 Because Ms. Horne was conducting the agency’s investigation, the ALJ properly concluded that when Raven was directed to appear before Ms. Horne for an investigative interview he was being compelled to appear before an “agency in an investigation,” as that phrase is used in section 120.62(2). Therefore, we reverse and remand for entry of a final order consistent with that recommended by the ALJ.
 

 Reversed and remanded with directions.
 

 ALTENBERND and WHATLEY, JJ., Concur.
 

 [1]
 

 . Raven was employed under an annual contract which, he had been advised, was not being renewed before the allegations of misconduct arose. By the time the ALJ issued his Recommended Order, the school year and Raven's contract had long since expired. In fact, there was only about one month remaining on his contract when the School Board initiated its investigation and termination proceedings.
 

 [2]
 

 . The ALJ's order contained findings of fact and conclusions of law. The School Board adopted all of the paragraphs labeled findings of fact and rejected many of the paragraphs labeled conclusions of law. However, many of the “conclusions of law” are actually findings of fact, which were improperly rejected because all were supported by competent substantial evidence.
 
 See Dunham v. Highlands County Sch. Bd.,
 
 652 So.2d 894, 896 (Fla. 2d DCA 1995).